## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| SAMUEL KATZ, on behalf of herself and others similarly situated, | : | |
| | : | CASE NO. 0:21-cv-62476-AHS |
| Plaintiff, | : | |
| | : | |
| v. | : | **CLASS ACTION** |
| | : | |
| AMERICAN ADVISORS GROUP, INC., | : | |
| | : | |
| Defendant. | : | |
| _____/ | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant American Advisors Group's motion to dismiss or strike Plaintiff's class allegations is a blatant attempt at misdirection.

First, Plaintiff sufficiently alleges that his cellular telephone number is a residential number by alleging that he subscribes to it in personal name, he registered it with the National Do Not Call Registry, he uses it for personal purposes (aside from receiving Telephone Consumer Protection Act violative calls), and it is not associated with a business. Nothing more is required at this stage of the proceedings notwithstanding Defendant's meritless factual attack on Plaintiff's prudential standing.

Second, Plaintiff sufficiently alleges that he received multiple telephone solicitations initiated by the Defendant itself, and that therefore his injuries were caused and redressable by Defendant, by alleging that he received five calls over two days from two different phone numbers that other consumers have complained about receiving robocalls from, and that during these calls the caller identified itself as working for American Advisors Group (and did not identify any other company), provided American Advisor Group's tollfree number as a callback number, qualified the Plaintiff for a mortgage loan, and then provided details about the mortgage loan. The Court should not draw unreasonable inferences in Defendant's favor at the pleading stage to conclude otherwise.

Third, and similarly, Plaintiff sufficiently alleges that Defendant's TCPA violations were willful and knowing by alleging facts demonstrating that Defendant was aware that it was making unsolicited telemarketing calls to Plaintiff and that other consumers have complained about similar calls.

1

Finally, there is no basis for striking Plaintiff's class allegations. The class is defined based on objective criteria, and it is premature to conclude that the class is overbroad or that common issues don't predominate without discovery.

The Court should therefore deny Defendant's motion in total.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff subscribes to the phone number, (305) 363-XXXX, in his personal name. First Amended Complaint (ECF 13) at ¶ 13. The Plaintiff registered the number on the National Do Not Call Registry on or around December 9, 2017. *Id*. at ¶ 14. The number is used by the Plaintiff for personal purposes. *Id*. at ¶ 15. The number is not associated with a business. *Id*. at ¶ 16.

At no point has Plaintiff sought out or solicited information regarding Defendant American Advisors Group's services. *Id*. at ¶ 17. Despite this, the Plaintiff has repeatedly received calls from American Advisors Group. *Id*. at ¶ 18.

The Plaintiff received calls American Advisors Group on August 19 and August 20, 2021. *Id*. at ¶ 19. He received three calls on August 19, 2021 and two calls on August 20, 2021. *Id*. at ¶ 20. Two of the calls on August 19 came from Caller ID (754) 336-7866. *Id*. at ¶ 21. Indeed, NoMoRobo, who won the FTC's competition for tracking robocalls, as a "robocaller", has reported that Caller ID as a "robocaller". *Id*. at ¶ 22. The other three calls came from (305) 722-3556. *Id*. at ¶ 23.

The calls were made to qualify Plaintiff for and offer Plaintiff American Advisor Group's mortgage services. *Id*. at ¶ 24.

On the August 19, 2021 calls, at least one of the callers identified as "customer service at American Advisor Group," stated she wanted to provide more information regarding a reverse mortgage loan from American Advisor Group, and provided the call back number 866-753-6036.

2

*Id*. at ¶ 25. That is a telephone number that American Advisor Group uses to market its services. *Id.* at ¶ 26 (citing: https://800notes.com/Phone.aspx/1-866-753-6036 ("Caller: American Advisers Group"; "Call type: Telemarketer")).

Mr. Katz received similar calls the next day on August 20, 2021. *Id*. at ¶ 27.

Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications. *Id*. at ¶ 28.

## ARGUMENT

### 1. **Plaintiff Sufficiently Alleges That His Phone Number is a Residential Number.**

Defendant's argument that Plaintiff's personal telephone number is not entitled to coverage under the National Do Not Call Registry is based on a myopic view of the scope of the TCPA's coverage. Under Defendant's view of the TCPA, only landline telephones that are physically located in the home are entitled to the protections of the National Do Not Call Registry. Of course, this is not the law. In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers" a term it explicitly acknowledged easily extends to the non-business subscribers of wireless telephone lines. *See* 47 C.F.R. § 64.1200 (c)(2)(limiting DNC Registry to "residential" subscribed numbers). In this regard, the Code of Federal Regulations at 47 C.F.R. § 64.1200(e) also provides that the:

> "rules set forth in paragraph (c) … of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

*See* 47 C.F.R. § 64.1200(e). *See Becker v. Pro Custom Solar LLC*, No. 2:19-cv-535-FtM-29NPM, 2020 U.S. Dist. LEXIS 14310, at *20 (M.D. Fla. Jan. 29, 2020) (finding that, under 47 C.F.R. § 64.1200(e), "Plaintiff's failure to allege he received calls on a landline does not warrant dismissal"). As the FCC noted, "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14038 at ¶ 35 (July 3, 2003). The FCC therefore concluded that it can "presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.* at 14039 at ¶ 36. Mr. Katz does not allege anything that should deprive him of this presumption.

Mr. Katz does not allege that his number is a business number because it is not. Instead, Mr. Katz alleges that he registered his number on the National Do Not Call Registry on December 9, 2017. *See* ECF 13 at ¶ 14. He alleges that the "number is used by the Plaintiff for personal purposes" and that the "number is not associated with a business." *Id.* at ¶ 15-16. These allegations are more than sufficient to state a claim for a violation of the TCPA's National Do Not Call Registry. *See Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020).

Indeed, another court recently *granted summary judgment for the plaintiff* in much more unclear circumstances where a number was used for both personal and business purposes:

> The parties do not dispute that plaintiff's cellular number was registered in his name or that the service plan for that number was billed to his home address. His number was not issued by his employer nor was it in his employer's name. Having considered both motions separately as they relate to this issue, the court recommends granting summary judgment in favor of plaintiff by finding that DNC protection applied to his number because he was a residential subscriber. *See Scott*, 550 U.S. at 380.

*Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *13-14 (D. Mass. Dec. 3, 2021).

4

The fact that Mr. Katz's telephone number rings on his cellular telephone, as opposed to in his residence, does not remove the National Do Not Call Registry's protections. In fact, such an argument is expressly contrary to Eleventh Circuit law.  In fact, Judge Altonaga recently explained at length why under the Hobbs Act a district court cannot reject the Federal Communications Commission's regulations, which deem a cellular telephone number used for personal purposes a "residential telephone" line entitled to the protections of the National Do Not Call Registry. *Correll v. Iconic Mortgage*, No. 1:20-cv-24858-CMA, 2021 U.S. Dist. LEXIS 216703, at *11-15 (S.D. Fla. Feb. 8, 2021) ("Where the Hobbs Act applies, as here, a district court must afford FCC final order deference and may only consider whether the alleged action violates FCC rules or regulations." (internal citations omitted)).

Relatedly, Defendant's zone of interests argument is also not appropriately resolved at the motion to dismiss stage. While Mr. Katz strongly denies Defendant's characterization of his conduct and phone usage, which is simply inaccurate, that analysis is appropriately done at the summary judgment stage. *See Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA"). In fact, another federal court has explicitly rejected this argument in another lawsuit involving Mr. Katz. In *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793 (D. Mass. Sep. 24, 2019), Judge Burroughs held in denying *summary judgment*, "although telemarketing calls may not truly be a scourge for Mr. Katz, who has turned the calls into a financial opportunity, the issue of Mr. Katz's standing boils down to whether he maintained the number that Liberty Power's agents called *for any purpose other than attracting telemarketing calls to support his TCPA lawsuit*." *Id.* at *30 (emphasis added). Discovery will demonstrate that

5

Mr. Katz does in fact use the telephone number at issue for purposes other than attracting TCPA violative calls.

Plaintiff therefore sufficiently alleges that his phone number is a residential number entitled to the protections of the National Do Not Call Registry and that, as a result, he has prudential standing. *Cf.* Motion at 9.

2. **Plaintiff Sufficiently Alleges Receiving Multiple Solicitation Calls from Defendant.**

Mr. Katz has plainly alleged that AAG made the calls at issue and as such has adequately alleged AAG's direct liability for multiple solicitation calls. Plaintiff believes that AAG made the calls because the only company identified by anyone that Plaintiff spoke with was AAG. And Plaintiff has alleged that the purpose of the calls was to sell a mortgage product by alleging the content of the calls in which he was qualified for and provided information regarding a reverse mortgage loan notwithstanding never have requested it.

Specifically, the Plaintiff has alleged:

- At no point has Plaintiff sought out or solicited information regarding Defendant American Advisors Group's services.

- Despite this, the Plaintiff has repeatedly received calls from American Advisors Group.

- The Plaintiff received calls American Advisors Group on August 19 and August 20, 2021.

- He received three calls on August 19, 2021 and two calls on August 20, 2021.

- Two of the calls on August 19 came from Caller ID (754) 336-7866.

- Indeed, NoMoRobo, who won the FTC's competition for tracking robocalls, as a "robocaller", has reported that Caller ID as a "robocaller". https://www.nomorobo.com/lookup/754-336-7866

- The other three calls came from (305) 722-3556.

- The calls were made to qualify Plaintiff for and offer Plaintiff American Advisor Group's mortgage services.

6

- On the August 19, 2021 calls, at least one of the callers identified as "customer service at American Advisor Group," stated she wanted to provide more information regarding a reverse mortgage loan from American Advisor Group, and provided the call back number 866-753-6036 contacted him regarding a reverse mortgage loan.

- That is a telephone number that American Advisor Group uses to market its services. See https://800notes.com/Phone.aspx/1-866-753-6036 ("Caller: American Advisers Group"; "Call type: Telemarketer").

See ECF 13 at ¶ 17-26.

At this stage of the proceedings, all allegations must be accepted as true, and all reasonable factual inferences drawn in favor of the plaintiff. Notwithstanding, AAG asks the Court to draw inferences in its favor, and against the Plaintiff. For example, AAG asks the Court to infer that any call that Plaintiff did not describe the precise content of was not made by AAG and/or was not a solicitation. But that's not reasonable.

Under the TCPA, whether calls constitute telemarketing is determined based on the caller's underlying purpose in making the calls, regardless of the content of any specific call. *See, e.g., Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) ("the purpose of the calls is the critical issue in this case"); *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 917-18 (9th 2012) (citing FCC order: "[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message."); *Bennett v. GoDaddy.com LLC*, No. CV-16-3908, 2019 U.S. Dist. LEXIS 59766, at *18-27 (D. Ariz. Apr. 8, 2019) ("The relevant question is Defendant's *purpose* in initiating the calls" (emphasis in original)).

Here, Plaintiff alleges that he answered more than two calls from AAG during which the caller actually promoted AAG's mortgage products to him. This is enough to state a TCPA claim. 47 U.S.C. § 227(c)(5) (requiring two telemarketing calls in twelve months for a private right of action). This is particularly true here because all of the calls Plaintiff received from AAG close in time to and from the same telephone numbers as the calls to Plaintiff involving promotion of

7

AAG's products and identified as coming from AAG's employees. It is therefore reasonable to infer at this stage that all of the calls from AAG were made for the same purpose as the calls during which the caller identified their purpose (i.e., to sell mortgage products), particularly because of other consumers' complaints regarding the same types of calls from AAG.

As a result, at this stage it is plausible, if not necessary, to infer that AAG itself called Plaintiff and the purpose of the calls was telemarketing, and that as a result, Plaintiff's injury from the calls is traceable to AAG. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("[E]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement.").

The cases AAG cites do not change that conclusion. In fact, in the majority of AAG's cases, the plaintiffs' pleadings were deficient either because (1) they failed to distinguish between the conduct of various named-defendants in alleging that all of the defendants initiated the calls to them and/or (2) they failed to allege why they believed the defendant called them. *See, e.g., Smith v. Direct Bldg. Supplies, LLC,* No. 20-3583, 2021 U.S. Dist. LEXIS 193657, at *8-9 (E.D. Pa. Oct. 7, 2021) ("Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls. The FAC merely states that "Defendant contacted Plaintiff on Plaintiff's cellular telephone number ending in - 6860, in an attempt to solicit Plaintiff to purchase Defendant's services…The FAC, however, provides no details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such as that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services."); *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 U.S. Dist. LEXIS 231433, at *4 (E.D. Va. Apr. 15, 2019) ("In this respect, plaintiff

8

fails to plead facts to support his conclusory allegation that defendant called plaintiffs cellular phone. The Complaint is devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiffs phone. The lone *fact* marshalled in the Complaint that even comes close to supporting plaintiffs conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' Compl. ¶ 11. But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone."); *Hirsch v. Lyndon S. Ins. Co.*, No. 3:17-cv-1215-J-39JBT, 2019 U.S. Dist. LEXIS 182151, at *11-12 (M.D. Fla. June 7, 2019) ("Rather, the only allegations regarding who made the subject calls continue to impermissibly lump all Defendants together, making it unclear who made the calls or what theory of liability Plaintiff intends to pursue against each Defendant.").

Here, the only party alleged to have any involvement in the calls is AAG, and Plaintiff alleges that he believes that the calls were made by AAG because the callers informed him that he was speaking with AAG. Indeed, while recently dealing with a motion to dismiss making similar arguments in a TCPA case from the same defense counsel, another court in this Circuit immediately denied the motion holding:

> The question before the Court at this juncture is whether Plaintiff pleads a valid cause of action, not whether Plaintiff establishes the claim. Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.
>
> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because

9

> she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.
>
> Sunpro next argues that, because Plaintiff failed to plead facts showing any conduct attributable to Sunpro as opposed to third parties, Plaintiff lacks Article III standing. The Court quickly disposes of this argument because the Court concludes that the Amended Complaint sufficiently alleges that Sunpro placed the subject calls. Sunpro's remaining arguments in favor of dismissal are denied for the reasons stated in Plaintiff's response.

*Stemke v. Marc Jones Constr., LLC,* No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021). Similarly, here, the Plaintiff has alleged the specific content of the calls as well as the fact that the caller promoted AAG's services and that he was provided AAG's number for marketing as a callback number.

Plaintiff therefore sufficiently alleges that he received multiple solicitation calls initiated by AAG itself and that, as a result, his injuries are traceable to and redressable by AAG.[1]

### 3. **Plaintiff Sufficiently Alleges a Willful or Knowing TCPA Violation.**

AAG's attempt to dismiss part of the Plaintiff's single cause of action because it claims that the Plaintiff does not adequately allege willful or knowing damages should also be rejected.

---

[1] To the extent AAG argues that the Plaintiff is required to plead imminent harm from future violations of the TCPA to seek injunctive relief, AAG is wrong. In the Eleventh Circuit, for a statutory injunction, if the "plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint." *See Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) ("In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. It specified that where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint.").

Statutory damages under the TCPA may be trebled if the Court, in its discretion, deems that a defendant "willfully or knowingly" violated the TCPA.

The TCPA is part of the Communications Act of 1934. The Act defines "willful" as "the conscious and deliberate commission or omission of [an] act, irrespective of any intent to violate any provision of this Act." 47 U.S.C. § 312(f)(1). As a result, as courts around the country have recognized, "a person need not have intent to commit an unlawful act in order to act willfully or knowingly under the TCPA." *Roylance v. ALG Real Estate Servs.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at *31 (N.D. Cal. Mar. 16, 2015). "[I]n the context of the TCPA, the term acting 'willfully' means that the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute." *Sengenberger v. Credit Control Servs.*, No. 1:09-cv-02796, 2010 U.S. Dist. LEXIS 43874, at *16-17 (N.D. Ill. May 5, 2010) (internal citations and quotations omitted). Similarly, for "an award of treble damages under the TCPA, the term 'knowingly' requires that liability be imposed even without [a defendant's] knowledge that the conduct violated the statute." *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007). "[T]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." *Id.* at 770 (quoting *Bryan v. United States*, 524 U.S. 184, 192 (1998)). Thus, "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Id.*; *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226-27 (D. Mass. 2014) ("[T]he willful or knowing standard [of the TCPA] require[s] only that a party's actions were intentional, not that it was aware that it was violating the statute."); *Bridgeview Health Care Ctr., Ltd. v. Clark*, Case No. 1:09-cv-05601, 2013 U.S. Dist. LEXIS 37310, at *21-22 (N.D. Ill. Mar. 19, 2013) (a "plaintiff need not prove that defendant

11

had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA." (internal citations and quotations omitted)).

The Plaintiff plainly alleges that AAG was aware it was engaged in telemarketing conduct to him. Moreover, here the Plaintiff has alleged that AAG was also aware that its telemarketing conduct was resulting in complaints as he has plainly alleged that "NoMoRobo, who won the FTC's competition for tracking robocalls, as a 'robocaller', has reported that Caller ID as a 'robocaller'". *See* ECF 13 at ¶ 22.

The Plaintiff therefore sufficiently alleges Defendant's willful or knowing TCPA violation.

4. **There is No Basis for Striking Plaintiff's Class Allegations at this Stage.**

While motions to strike class allegations may be appropriate where the "propriety *vel non* of class certification can be gleaned from the face of the pleadings… [P]recedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (reversing district court's striking of class allegations, explaining that "the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least.").

There is a high standard and limited circumstances under which it is appropriate to strike class allegations at the pleading stage in *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) (based on the parties' "diverging views" and "conflicting interpretations of the issues and evidence that would be required to establish liability and damages for the class as a whole," the district "court erred in finding that, as a matter of law, class treatment was inappropriate based on the face of Plaintiffs' complaint")*; see Landsman & Funk PC v. Skinder-*

*Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"); *Medina v. Enhanced Recovery Co.*, No. 15-14342, 2017 U.S. Dist. LEXIS 186651 (S.D. Fla. Nov. 9, 2017) ("Defendant's belief that Plaintiff's claims ultimately will fail due to the need for individualized inquiry does not, at this stage of proceedings, prohibit discovery on these issues."); *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance."); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits. That power is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims").

As a result, district courts have been cautious in considering motions to strike class allegations and have denied the "extreme remedy" where "Defendants did not establish from the face of the complaint that it will be impossible to certify the classes alleged by Plaintiffs." *E.g., Sullivan v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-Orl-40KRS, 2018 U.S. Dist. LEXIS 219633, at *9 (M.D. Fla. Aug. 1, 2018) (internal citation omitted); *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40KRS, 2018 U.S. Dist. LEXIS 67501, at *3-4 (M.D. Fla. Mar. 12, 2018);

*see MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*, No. 6:18-cv-1456-Orl-40DCI, 2019 U.S. Dist. LEXIS 86051, at *11 (M.D. Fla. May 22, 2019) (finding that arguments for dismissal of class allegations generally "are premature"); *Burke v. Credit One Bank, N.A.*, No. 8:18-cv-00728-EAK-TGW, 2019 U.S. Dist. LEXIS 62770, at *6 (M.D. Fla. Feb. 5, 2019) ("courts faced with motions to dismiss or strike class allegations prior to class certification have declined to rule on class certification due to the prematurity of such motions."). Considered through this framework, AAG's motion to strike Plaintiff's proposed classes should be denied.

First, Plaintiff's proposed class is not a "fail-safe class." A fail-safe class is one "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). Conversely, a class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted).

Contrary to what AAG argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions. For example, for the DNC class, the Court will ask: (1) Did AAG call them at least two times within twelve months? (2) Were the calls to a phone number registered on the DNC for more than 30 days? (3) Did AAG make the calls for the same reason AAG called the Plaintiff? *See id*. at *8-9 (finding that the plaintiff's proposed classes, including a DNC class, were not fail safe).

After determining class membership, if the jury finds that AAG had consent to make the calls, the class's claims will fail on the merits. *See id.* at *9 ("In addition, the proposed class definitions here are different from the fail-safe class definitions cited by Defendants because the

class definitions here do not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership." Plaintiff's proposed class is therefore not a fail-safe class.

Second, AAG does not identify an actual basis to conclude that Plaintiff will be unable to establish commonality or predominance. AAG's mere allusion to potential consent or established business relationship defenses is not enough to find Plaintiff's classes uncertifiable at this or any other stage. *See, e.g., Mohamed v. Off Lease Only*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("conclusory argument" about prior express consent cannot defeat predominance); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *43 (S.D. Fla. June 26, 2018) ("unadorned consent defenses will not defeat class certification").

Courts regularly reject defendants' attempts to speculate as to the likelihood of class certification prior to discovery. As one court recently explained:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*E.g., Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). The Plaintiff's class definition is almost the same here as it was in *Rosenberg* with respect to the Do Not Call class members and should be treated the same.

Third, Plaintiff's proposed classes are not overbroad. "Express consent" and "established business relationship," are not elements of a plaintiff's prima facie case for Plaintiff's TCPA claims, but are "affirmative defense[s] for which the defendant bears the burden of proof." *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); 47 C.F.R. §§ 64.1200(c)(2)(i)-(ii), (f)(5). Even at the class certification stage, evidence of a defense as to

some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *See True Health Chiropractic v. McKesson Corp.*, 896 F.3d 923, 932-33 (9th Cir. 2018) (predominance satisfied where "the record shows . . . little or no variation" in the forms used to obtain consent). Here, since discovery has just commenced, there has been no showing that AAG made any calls with consent or based on the existence of an established business relationship.

Notably, although the Plaintiff does not believe that AAG has consent or an established business relationship with class members, Plaintiff did not include define the class with regard to such defenses because other federal courts have found that such attempts render classes fail-safe. For example, in *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015); *Olney v. Job.Com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal. Sep. 30, 2013).

Moreover, discovery can be used to identify which telephone numbers that were called were residential, had provided consent, or had an established business relationship, which, in any event, are all class member identification issues. *See, e.g., Mey v. Frontier Communications Corp.*,

No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, … through a standardized and efficient claims process at a later stage.").

Given the nature of commercial and generic calling campaigns like AAG's, and the existence of complaints from other consumers who, like Plaintiff, had no relationship with AAG, it is likely that there are thousands or more people whose telephone numbers AAG cold called like Plaintiff. Plaintiff is entitled to discovery to demonstrate at class certification that the defenses and other arguments AAG prematurely identifies at this stage raise common questions with common answers. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients."); *Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020) (finding in a TCPA case: "[T]he defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied."). There is no reason to reach a different conclusion here regarding the defenses or denials to TCPA liability AAG simply alludes to at this stage of the proceedings.

At most, as in *Mills* and *Herrera*, AAG's various arguments highlight the parties' "diverging views" of the case and the issues that may be addressed after the benefit of discovery at the class certification and summary judgment stages. Common questions of law and fact predominate in this

17

action, and the proposed classes are not facially uncertifiable. The Court should therefore deny AAG's motion to strike Plaintiff's class allegations.

## CONCLUSION

Based on the foregoing, the Court should deny American Advisors Group's motion to dismiss or strike Plaintiff's class allegations in all respects.

Dated: April 5, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Avi Kaufman
　　　　　　　　　　　　　　　　　　　　　　Avi R. Kaufman (FL Bar no. 84382)
　　　　　　　　　　　　　　　　　　　　　　kaufman@kaufmanpa.com
　　　　　　　　　　　　　　　　　　　　　　Rachel E. Kaufman (FL Bar no. 87406)
　　　　　　　　　　　　　　　　　　　　　　rachel@kaufmanpa.com
　　　　　　　　　　　　　　　　　　　　　　KAUFMAN P.A.
　　　　　　　　　　　　　　　　　　　　　　237 South Dixie Highway, 4th Floor
　　　　　　　　　　　　　　　　　　　　　　Coral Gables, FL 33133
　　　　　　　　　　　　　　　　　　　　　　Telephone: (305) 469-5881

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the putative class*